# In the United States Court of Federal Claims

No. 24-1028
(Filed: December 19, 2025)

```
* * * * * * * * * * * * * * * * *
                                *
MICHAEL JORDAN, et al.,         *
                                *
              Plaintiffs,       *
                                *
       v.                       *
                                *
THE UNITED STATES,              *
                                *
              Defendant.        *
                                *
* * * * * * * * * * * * * * * * *
```

*Joseph Whitcomb*, Whitcomb, Selinsky, PC, of Lakewood, CO, for Plaintiffs.

*Daniel Bertoni*, Trial Attorney, with whom were *Eric P. Bruskin*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, all of Washington, D.C., for Defendant and *Samantha Duncan*, *Jenna Galas*, and *Maryellen Righi*, Attorneys, of the U.S. Agency for Global Media, *Alexandra Wilson* and *Marianne Perciaccante*, Attorneys, of the U.S. Department of State, *Wendy A. Harris*, Attorney, of the U.S. Postal Service, *Christopher Tully*, Attorney, of the U.S. Department of Health & Human Services, and *Joshua Dehnke*, *Amy Baines*, and *Glenn Cason*, Attorneys, of the Social Security Administration, all of Counsel.

## ORDER AND OPINION

**SOMERS**, Judge.

Plaintiffs Jason Lambro, Michael Jordan, Russell Greene, John Douglas Burke, Marie-Pascale Ruberandinda, Suzette Justice, and Steve Justice, on behalf of themselves and others similarly situated, bring this action against the United States under the Fair Labor Standards Act ("FLSA"). Plaintiffs allege that, despite working for various federal agencies under purchase order agreements that classified them as non-personal service contractors or independent contractors, they should be deemed government employees for purposes of the FLSA. Before the Court is the government's motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. For the reasons that follow, the Court grants the government's motion to dismiss as to Plaintiffs Lambro, Jordan, Greene, Burke, and Ruberandinda, and defers ruling on the motion as to Plaintiffs Suzette and Steve Justice pending the filing of a motion for leave to amend the complaint.

# BACKGROUND

## A.    Factual Background

Plaintiffs, individually and on behalf of similarly situated individuals, bring this putative collective action against the United States under the FLSA.  Plaintiffs state that this putative collective "consists of all persons U.S. Government agencies classified as independent contractors but were employees pursuant to the FLSA's 'suffer to work' definition under the 'economic realities test' and [for] whom the government did not pay overtime and minimum wage pay as required by the [FLSA]."  ECF No. 1 ¶ 119.  Plaintiffs broadly allege that they were treated as non-personal service contractors or independent contractors when they should have been treated as employees under the FLSA, *id.* ¶ 1, and that this treatment constituted willful misclassification because "[a]ll of the Defendant agencies went to meaningful pains to contrive schemes meant to sidestep the requirements of the FLSA," *id.* ¶ 2.

Plaintiffs worked for five separate federal agencies or subagencies: the United States Agency for Global Media ("USAGM"), the United States Department of State ("State Department"), the Social Security Administration ("SSA"), the National Institutes of Health ("NIH"), and the United States Postal Service ("USPS").  *Id.* ¶¶ 67–81.  Plaintiffs' complaint asserts five causes of action: FLSA misclassification, *id.* ¶¶ 130–49; willful violation of the FLSA, *id.* ¶¶ 150–56; declaratory judgment, *id.* ¶¶ 157–63; retaliation, *id.* ¶¶ 164–70; and fraudulent concealment, *id.* ¶¶ 171–80.  Although Plaintiffs all appear to allege claims under the FLSA, their individual circumstances vary, as they performed different work for different agencies at different times.  Moreover, certain claims are unique to certain Plaintiffs.  Accordingly, the Court briefly recounts the factual background relevant to each Plaintiff or set of Plaintiffs.

### 1.    Plaintiff Jason Lambro

Plaintiff Jason Lambro worked for the State Department as an independent contractor until April 2024.  *Id.* ¶ 27, 31.  While working at the State Department, Mr. Lambro brought a different FLSA case before this Court in which he alleges violations by the USAGM, an agency he previously worked for under a series of purchase order agreements.  *See generally Lambro v. United States*, 175 Fed. Cl. 536 (2025).  Mr. Lambro alleges that after the Federal Circuit "remanded his FLSA case, State Department supervisors began harassing [him] about alleged abuses of time off policies."  *Id.* ¶ 29.  Subsequently, according to Mr. Lambro, "[i]n April 2024, State Department officials terminated Mr. Lambro's credentials and his contract, constructively firing him, without any notice or explanation why.  On information and belief, Mr. Lambro alleges that this 'constructive firing' was retaliation for the protected act of filing this case and prevailing at [the Federal Circuit]."  *Id.* ¶ 31.

Unlike other Plaintiffs in this case, Mr. Lambro does not appear to bring an FLSA misclassification claim.  *See id.* ¶¶ 112–16 (asserting that USAGM, NIH, USPS, and SSA Plaintiffs satisfy the economic realities test but omitting Mr. Lambro); *see also* ECF No. 1-2 (containing declarations from all named Plaintiffs other than Mr. Lambro regarding the economic realities test).  Rather, as the sole plaintiff under Count IV of the complaint, Mr.

Lambro brings a claim for retaliation "for engaging in the protected act of pursuing his rights under the FLSA." ECF No. 1 ¶ 164. Mr. Lambro may also be included with those Plaintiffs pleading Count V, a standalone tort claim of fraudulent concealment. *See id.* ¶¶ 171–180 (appearing to assert claims of fraudulent concealment of Plaintiffs' rights under the FLSA for "Named Plaintiffs" or "All of the Named Plaintiffs").

### 2.    Plaintiff John Burke

Mr. Burke conducted laboratory research for NIH from approximately September 2014 to 2021 under a series of purchase agreements. ECF No. 1-1 at 2–3; *see* ECF No. 1 ¶ 47. Through these purchase agreements, Mr. Burke alleges that the government "artificially limited [his] hours to 312.5 hours," and "[t]his limitation amounted to a 'scheme to avoid paying overtime.'" ECF No. 1 ¶ 43 (citing ECF No. 1-1 at 13). Mr. Burke "avers that the amount of [his] contract was limited to $10,000 in an attempt to sidestep reporting requirements and competition requirements . . . under the [Federal Acquisition Regulation ("FAR")]." *Id*. ¶ 47. Additionally, Mr. Burke claims that "NIH also engaged in 'fraudulent concealment' by failing to compete the requirements [he] was performing on FBO or sam.gov." *Id*. ¶ 45.

Therefore, Mr. Burke alleges that he was misclassified as a contractor when he was, in reality, an employee for purposes of the FLSA. *See id.* ¶ 113 (applying the economic realities test). And, like other Plaintiffs in this case, Mr. Burke allegedly "worked in excess of 40 hours" and "in excess of eight-hour days," for which he did not receive overtime pay. *Id*. ¶¶ 49–50. Moreover, according to Mr. Burke, he "worked hours and days for which NIH did not pay [him] at all." *Id*. ¶ 51. Accordingly, Mr. Burke asserts that NIH denied him "the rights, protections, and benefits provided under the FLSA, 29 USC §§ 201, et seq." *Id*. ¶ 131.

The instant case is not the first time Mr. Burke has sought relief for his alleged harms. On June 6, 2022, Mr. Burke submitted a claim to an NIH contracting officer seeking compensation for his work as a laboratory technician with NIH. *See* ECF No. 1-1 at 2–6. Therein, Mr. Burke asserted a claim "for all damages and monies owed arising out of the failure of the National Human Genome Research Institute ("NHGRI") to classify [his] employment correctly and to compensate [him] appropriately." *Id*. at 2. Specifically, Mr. Burke asserted that he "was misclassified as an independent contractor when the economic reality was that [he] functioned as an employee and should therefore have been classified as the latter." *Id*. at 3 (emphasis omitted). Following the contracting officer's denial of his claim, Mr. Burke appealed this decision to the Civilian Board of Contract Appeals ("CBCA"), but the CBCA also denied Mr. Burke's claim. *See Burke v. Sec'y of Health & Hum. Servs.*, 2024-1019, 2024 WL 4579346, at *1 (Fed. Cir. Oct 25, 2024) (affirming the CBCA's dismissal of Mr. Burke's claim). Subsequently, on October 5, 2023, Mr. Burke appealed the CBCA's decision to the Federal Circuit. *See* Notice of Docketing, *Burke v. Sec'y of Health & Hum. Servs.*, No. 24-1019 (Fed. Cir. Oct. 5, 2023), ECF No. 1-1. The Federal Circuit denied Mr. Burke's appeal on October 25, 2024. *See Burke*, 2024 WL 4579346, at *1.

### 3.    Plaintiff Marie-Pascale Ruberandinda

Ms. Ruberandinda worked as an independent contractor for USPS.  ECF No. 1 ¶ 52.  In July 2023, Ms. Ruberandinda contracted with USPS for a six-year term to "deliver[] mail along a highway route in rural Texas."  ECF No. 1-2 at 1 ¶ 3; *id.* at 2 ¶ 13.  Soon after Ms. Ruberandinda began service with USPS on October 1, 2023, the USPS contracting officer terminated her contract for default on October 16, 2023.  ECF No. 24-1 at 48–51.  Ms. Ruberandinda appealed this decision to the Postal Service Board of Contract Appeals ("PSBCA").  *Id.* at 32.  On February 12, 2024, the PSBCA dismissed Ms. Ruberandinda's appeal with prejudice.  *Id.* at 53.

Ms. Ruberandinda alleges that USPS misclassified her as an independent contractor because, under the economic realities test, she should have been treated as a federal employee for FLSA purposes.  ECF No. 1 ¶¶ 114–115 (applying the economic realities test).  Ms. Ruberandinda asserts that "USPS engaged in a 'scheme to avoid paying overtime,' by limiting Ms. Ruberandinda . . . to 'firm fixed price contracts,' with no mechanism for reporting or collecting overtime."  *Id.* ¶ 57.  Furthermore, she claims that "USPS contracting officers knew in advance of executing the contracts with[] Ms. Ruberandinda . . . that the mail routes could not be completed in a forty-hour work week."  *Id.*  Additionally, Ms. Ruberandinda alleges that she "delivers the mail for far less than minimum wage."  *Id.* ¶ 77.

### 4.    Plaintiffs Michael Jordan and Russell Greene

Plaintiffs Jordan and Greene have worked for USAGM since 2004 and 2006 respectively.  *Id.* ¶¶ 5–6.  Plaintiffs Jordan and Greene worked for USAGM under a series of purchase orders until "approximately July 2020."  *Id.* ¶ 88.  Although they continued to work for USAGM after July 2020, the time period relevant to the instant case is from 2004 or 2006 to July 2020 because Plaintiffs Jordan and Greene's claims concern the purchase order agreements for that period.  *See id.* ¶¶ 86–105; *see also id.* at 15 (section titled "Plaintiffs Jordan and Greene's and Similarly Situated Putative Employees' 2004–2020 Contract with the USAGM" (emphasis omitted)).

Plaintiffs Jordan and Greene initially worked for USAGM under a purchase order agreement "for a year with an option allowing USAGM to extend the contract term for a year at a time."  *Id.* ¶ 90.  Until 2020, Plaintiffs Jordan and Greene's contracts were renewed multiple times in one-year increments.  *Id.*  During this time, the substantive terms of their contracts did not change other than providing for "nominal pay increases."  *Id.* ¶ 90 n.3.  According to Plaintiffs Jordan and Greene, while the "express terms in the purchase order agreement provide ostensible independence to Plaintiffs Jordan and Greene in determining the manner and means of [their] work[,] . . . in practice, USAGM significantly controlled the timing and management of [their] work."  *Id.* ¶ 91.  For example, Plaintiffs Jordan and Greene allege that "USAGM supervisors told Plaintiffs Jordan and [Greene][1] when to arrive at work[,] . . . on what audio systems [they] would operate, . . . [and they] at all times were required to abide by the commands

---

[1] The Court notes that Plaintiffs confusingly refer to "Mr. Jordan and Lambro" in certain parts of their complaint while discussing the USAGM plaintiffs.  *See, e.g.,* ECF No. 1 ¶¶ 92–93.  For the purposes of deciding this motion, the Court assumes Plaintiffs meant to refer to Plaintiffs Jordan and Greene in these instances.

given, whether or not [they] agreed with those commands based upon [their] professional opinion[s]." *Id*. ¶ 92.  Moreover, USAGM provided Plaintiffs Jordan and Greene with all necessary equipment, *id.* ¶ 98, and determined which shows, days, and hours they worked, *id.* ¶ 100.  Furthermore, Plaintiffs Jordan and Greene assert that they "worked next to full-time, GS employees who completed the same work as [them] . . . [and] all of [their] actions were completed to meet the mission of USAGM." *Id*. ¶ 94.

Thus, Plaintiffs Jordan and Greene contend that while their purchase order contracts formally classified them as contractors, they were, in reality, federal employees for purposes of the FLSA.  *See id*. ¶¶ 1, 112.  Due to this alleged misclassification, Plaintiffs Jordan and Greene assert that they "were unable to obtain the . . . benefits of full employment," including paid sick leave, paid vacation time, shared responsibility for tax withholdings, the ability to join a labor union, tenure, health and short-term disability insurance, and joint contribution to retirement plans.  *Id*. ¶ 104.  Additionally, according to Plaintiffs Jordan and Greene, they "frequently worked in excess of 40 hours" and "in excess of eight-hour days," but never received overtime pay in violation of the FLSA's wage and hour provisions.  *Id*. ¶¶ 7–8.  Rather, they allege that USAGM paid them "purely by the hour and forced [them] to reduce [their] hours through contract clauses that limited [their] reporting to $3,000 per month, or the FAR micro-purchase threshold." *Id*. ¶¶ 5–6.  Furthermore, Plaintiffs Jordan and Greene claim that they were deprived of "their rights of collective bargaining under the Federal Service Labor-Management Relations Statute," and because they were deemed independent contractors, "any communications between [them] related to prices [charged] . . . for their services would have amounted to collusion," subjecting them to antitrust liability.  *Id*. ¶ 60.

In addition, Plaintiffs Jordan and Greene allege that USAGM willfully misclassified them as independent contractors.  *See id*. ¶ 58.  They assert that the Office of the Inspector General ("OIG") of the State Department audited USAGM in 2014 and found that its contracts to contractors like Plaintiffs Jordan and Greene "were, in fact, for personal services . . . , and created an employee-employer relationship." *Id*. ¶ 58, 106.  Yet, even after the OIG audit, USAGM failed to convert Plaintiffs Jordan and Greene's contracts into personal service contracts.  *Id*. ¶¶ 110–111.

Plaintiffs Jordan and Greene further allege that USAGM "contrive[d] schemes meant to sidestep the requirements of the FLSA." *Id*. ¶ 2.  USAGM "included a clause in its contract[s] with Messrs. Jordan and Greene . . . [that] forb[ade] them from 'misrepresenting their status as independent contractors.'" *Id*. ¶ 20 (quoting ECF No. 1-1 at 346).  According to Plaintiffs Jordan and Greene, "[t]his clause created serious risk of liability for breach of contract, termination for default, and the threat of the government pursuing them for excess procurement costs . . . ." *Id*.  Moreover, Plaintiffs Jordan and Greene contend that USAGM "'fraudulently concealed' its misclassification conduct by refusing to report violations of the Anti-Deficiency Act for failure to pay for services to Congress," *id.* ¶ 23 (quoting ECF No. 1-1 at 211), and "not compet[ing] any of the requirements Messrs. Jordan and Greene . . . performed on fedbizopps.gov as required by the FAR," *id.* ¶ 24.  As a result, Plaintiffs Jordan and Greene also appear to join the standalone tort claim for fraudulent concealment in Count V of the complaint.  *See id*. ¶¶ 171–180.

### 5.    Plaintiffs Suzette and Steve Justice

Suzette and Steve Justice ("the Justices") work as court reporters for SSA hearings involving Social Security disability claims.  ECF No. 1 ¶¶ 78–79.  Until 2017, the Justices "contracted directly with the federal government under a blanket purchase agreement."  ECF No. 1-2 at 15 ¶¶ 4–5; *id.* at 18 ¶¶ 4–5.  After 2017, the Justices contracted with Strategic Communications and Ace Reporting, two intermediary companies with which the SSA contracted to "oversee [its] contracts with Court Reporters."  *See id.* at 15 ¶¶ 5–6; *id.* at 18 ¶¶ 5–6.

The Justices allege that the SSA willfully misclassified them as independent contractors when, under the economic realities test, they should be classified as FLSA employees.  *See* ECF No. 1 ¶ 116 (applying the economic realities test).  The Justices further allege that the "SSA artificially lowered the hours the Justices . . . charged the government, by limiting pay to five dollars for canceled hearings."  *Id.* ¶ 36.  Consequently, the SSA deprived the Justices "of minimum wage by not allowing them to charge for the actual time worked, but instead limiting them to pay on a 'per hearing' basis."  *Id.*  According to the Justices, they were required "to show up to all hearings and bear the risk of whether the assigned hearings were cancelled[,] . . . and very often a 'canceled' hearing lasted much longer than five minutes."  *Id.* ¶ 37.  Additionally, the Justices allege that they "frequently worked more than 40 hours per week or eight hours per day without overtime compensation" in violation of the FLSA's wage and hour provisions.  *Id.* ¶ 38.  Thus, the Justices assert that the SSA willfully misclassified them and denied them the benefits they would have enjoyed as FLSA employees under the FLSA.  *See generally id.* ¶¶ 131–138.  Finally, the Justices allege that the "SSA engaged in [a] 'scheme to avoid paying overtime,' by contracting with several 'staffing companies' and limiting pay for canceled hearings to five dollars."  *Id.* ¶ 42.

## B.    Procedural History

This case is an outgrowth of another case before this Court, *Lambro v. United States*, 175 Fed. Cl. 536.  In that case, Plaintiff Jason Lambro, individually and on behalf of similarly situated individuals, filed a putative collective action under the FLSA to seek relief for misclassification.  *See* Transfer Complaint, *Lambro v. United States*, No. 21-1447 (Fed. Cl. June 17, 2021), ECF No. 20.  Many of the plaintiffs here sought to join *Lambro* as named plaintiffs.  *See* Proposed Third Amended Complaint, *Lambro*, 21-cv-1447 (Fed. Cl. June 18, 2024), ECF No. 58-1 (listing Suzette Justice, Steven Justice, John Burke, and Marie-Pascale Ruberandinda as named plaintiffs).  However, in that case, prior to ruling on the motion for leave to file a third amended complaint, the Court decided the threshold jurisdictional issue of whether Mr. Lambro had commenced a collective action claim within the FLSA's statute of limitations.  *See* Order, *Lambro*, 21-cv-1447 (Fed. Cl. June 20, 2024), ECF No. 60 (staying briefing on Plaintiff's motion to amend); Scheduling Order, *Lambro*, 21-cv-1447 (Fed. Cl. July 30, 2024), ECF No. 66.

On July 8, 2024, while waiting for the Court to resolve the threshold issue discussed above in *Lambro*, Plaintiffs filed this separate FLSA action.  *See* ECF No. 1.  Plaintiffs contemporaneously filed a motion asserting, *inter alia*, that the named and opt-in Plaintiffs' claims should be equitably tolled.  ECF No. 2.  The government moved to dismiss Plaintiffs'

complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the U.S. Court of Federal Claims ("RCFC"). ECF No. 24. Following briefing and oral argument, the government's motion to dismiss is now ripe for adjudication. *See* ECF Nos. 24, 30, 33, 35.

## DISCUSSION

### A. Legal Standard

This Court, like all federal courts, is a court of limited jurisdiction. Under the Tucker Act, the Court of Federal Claims may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, "[t]he Tucker Act does not, of itself, create a substantive right enforceable against the United States." *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing *Ferreiro v. United States*, 501 F.3d 1349, 1351 (Fed. Cir. 2007)). Rather, to state a claim within this Court's Tucker Act jurisdiction, "the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States." *Id.* In accordance with RCFC 12, the Court must dismiss any claim that does not fall within its subject matter jurisdiction. *See* RCFC 12(h)(3). In considering a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all factual allegations made by the nonmoving party and view all logical inferences in the light most favorable to that party. *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993)).

Even if this Court has jurisdiction over a claim, the Court must nonetheless dismiss the claim under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). In other words, if the plaintiff states facts in his or her pleadings that, even when viewed in the light most favorable to the nonmovant, are "fatally flawed in their legal premises," the Court must dismiss the claim. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993) (citing *Neitzke v. Williams*, 490 U.S. 391, 326–27 (1989)).

### B. Analysis

The government moves the Court to dismiss Plaintiffs' complaint pursuant to RCFC 12(b)(1) and 12(b)(6). ECF No. 24. The government contends, *inter alia*, that Mr. Lambro's claims fall outside this Court's subject matter jurisdiction because his claims sound in tort; that Plaintiffs Jordan, Greene, and Burke's and the Justices' claims are barred by the FLSA's statute of limitations; and that Ms. Ruberandinda's and Mr. Burke's claims are precluded by earlier judgements on those claims. *See id.* Despite Plaintiffs' attempts to resuscitate their untimely or otherwise barred claims, their efforts are largely unavailing, and, for the reasons discussed below, the Court grants the government's motion to dismiss Plaintiffs Lambro, Burke, Ruberandinda, Jordan, and Greene's claims in their entirety. However, the Court recognizes that the Justices may have timely commenced some of their claims. Accordingly, the Court defers

ruling on the government's motion to dismiss the Justices' potentially timely claims and instead will give them the opportunity to seek leave to amend the complaint to more clearly present those claims.  The Court discusses each Plaintiff's claims in turn but must first note that in assessing Plaintiffs' responses to the government's motion to dismiss, the Court was struck by the number of conclusory and nonresponsive arguments in Plaintiffs' response brief.  In their brief, Plaintiffs sample nearly every flavor of waiver.  Accordingly, the Court will note instances in which Plaintiffs failed to respond to the government, raised new arguments for the first time at oral argument, or failed to develop their arguments such that they waived these points.

### 1.    Mr. Lambro's Claims Are Dismissed Because They Sound in Tort.

Unlike the other named plaintiffs to this litigation, Mr. Lambro does not allege misclassification and, therefore, violations of the FLSA's wage and hour provisions.  *See* ECF No. 1 ¶¶ 112–16 (omitting Mr. Lambro and the State Department but mentioning all other named Plaintiffs and the agencies they worked for); *see also* ECF No. 1-2 (containing declarations from all named Plaintiffs other than Mr. Lambro); *see generally* ECF No. 1 (containing no specific factual allegations about the State Department misclassifying Mr. Lambro).  Rather, Mr. Lambro asserts claims for retaliation and fraudulent concealment in Counts IV and V of the complaint. ECF No. 1 ¶¶ 164–180.  The government asserts that these counts must be dismissed because they sound in tort and thus lie outside the Court's subject matter jurisdiction.  ECF No. 24 at 7–9. In response, Mr. Lambro essentially contends that this Court must be able to hear FLSA retaliation claims because it can hear other FLSA claims.  ECF No. 30 at 2.  Moreover, despite unfavorable precedent, Mr. Lambro argues that the 1977 amendments to the FLSA constitute a waiver of sovereign immunity that allows all claims under the FLSA to be heard in this Court. *Id.* at 3–4.  Specifically, Mr. Lambro posits that the "1977 amendment arguably repeals the Supreme Court's decisions in *Testan* and *Eastport*," which the Federal Circuit followed in *Qualls* and *Jentoft* (two cases in which the Federal Circuit held that FLSA tort claims cannot be heard in this Court).  *Id.* at 4.  Finally, Mr. Lambro contends that not allowing the Court to hear tort claims under the FLSA would result in a "disjointed remedial scheme" for litigants asserting both tort and non-tort claims.  *Id.*

Despite his efforts, Mr. Lambro's arguments fall short of establishing jurisdiction in this Court.  To begin, the FLSA authorizes suit "in any Federal or state court of competent jurisdiction."  *Zumerling v. Devine*, 769 F.2d 745, 749 (Fed. Cir. 1985).  Accordingly, as the Federal Circuit held in *Abbey v. United States*, a statute other than the FLSA—in the case of this Court, the Tucker Act—must provide the jurisdictional grant to hear a suit under the FLSA.  745 F.3d 1363, 1370 (Fed. Cir. 2014) ("[T]he fairest reading of section 216(b) is that it affirmatively invokes the forum specification for those damages suits found outside the four corners of the FLSA.  The Tucker Act is the only available specification that has been identified.").  In other words, the FLSA does not expand the bounds of the Court's subject matter jurisdiction as Mr. Lambro asserts.  Rather, for this Court to exercise jurisdiction over an FLSA claim, that claim must itself lie within the jurisdictional scope of the Tucker Act.

Mr. Lambro put forth similar arguments in *Lambro,* and the Court rejects them here as it did there.  *See Lambro*, 175 Fed. Cl. at 550–51.  Regardless of whether Mr. Lambro thinks it is "arguable" that the 1977 amendments repealed the Supreme Court's decisions in *Testan* and

*Eastport*, *see* ECF No. 30 at 4, it is inarguable the Federal Circuit squarely addressed this issue in *Jentoft v. United States*, which was decided after the 1977 amendments to the FLSA were enacted. 450 F.3d 1342 (Fed. Cir. 2006). There, the Federal Circuit held that because FLSA retaliation claims sound in tort, this Court lacks to jurisdiction to consider such claims. *Jentoft*, 450 F.3d at 1349 ("We agree with the Claims Court, however, that it lacked subject matter jurisdiction to consider [the plaintiff's] retaliation claim."). As the Court stated in *Lambro*, "to the extent that Plaintiff asserts that *Jentoft* was wrongly decided, the proper forum for this argument is not this Court." *Lambro*, 175 Fed. Cl. at 551.

Moreover, to the extent that fraudulent concealment is pled as standalone claim by Mr. Lambro or any other named plaintiff, Count V of the complaint must be dismissed because fraudulent concealment also sounds in tort. *See Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) (agreeing with the lower court that "[b]ecause fraud as a cause of action lies in tort," the Court of Federal Claims did not have subject matter jurisdiction over the plaintiff's "fraudulent assessment" and "fraudulent taking[s]" claims). Thus, pursuant to RCFC 12(b)(1), the Court dismisses Counts IV and V of the complaint for want of subject matter jurisdiction.

### 2. Mr. Burke's Claims Are Dismissed Because They Are Barred by 28 U.S.C. § 1500.

Although the government did not move to dismiss Mr. Burke's claims pursuant to 28 U.S.C. § 1500, the Court alerted the parties to Mr. Burke's potential section 1500 issue prior to oral argument, where it was addressed by both sides. *See* ECF No. 45 at 29:1–5, 94:12–17. Moreover, as section 1500 serves as a bar to this Court exercising jurisdiction over a claim, the Court has an independent duty to ensure that a plaintiff's claim does not run afoul of section 1500's proscription. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it." (citing cases)); *St. Bernard Par. Gov't v. United States*, 916 F.3d 987, 992–93 (Fed. Cir. 2019) ("It is well settled that limitations on subject-matter jurisdiction are not waivable; the court must address jurisdictional issues, even *sua sponte*, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case."). In short, as RCFC 12(h)(3) instructs, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Thus, even though section 1500 was not raised by the government, the Court must, of its own accord, dismiss Mr. Burke's claims if they are barred thereby.

Under section 1500, the Court "shall not have jurisdiction of any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States . . . ." Section 1500 "was enacted to prevent a claimant from seeking recovery in district court and the Court of Claims for the same conduct pleaded under different legal theories." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The statute "is more straightforward than its complex wording suggests. The [Court of Federal Claims] has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." *United States v. Tohono O'odham Nation*, 563 U.S. 307, 311 (2011). Accordingly, to decide whether it must dismiss a case pursuant to section 1500, the Court makes two inquiries: "(1) whether there is an earlier-filed 'suit or process' pending in

another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Res. Invs., Inc. v. United States*, 785 F.3d 660, 664 (Fed. Cir. 2015) (quoting *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013)).

In addressing the first inquiry, the Supreme Court instructs that the section 1500 analysis "depends upon the state of things at the time of the action brought." *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)). Thus, section 1500 bars this Court from exercising jurisdiction "over the claim of a plaintiff who, *upon filing*, has an action pending in any other court 'for or in respect to' the same claim." *Id.* at 209 (emphasis added). Stated differently, under section 1500, jurisdiction is "dependent on the state of things when the action is brought[] and cannot be rescued by subsequent action of either party or by resolution of the co-pending litigation." *Cent. Pines Land Co. v. United States*, 697 F.3d 1360, 1367 (Fed. Cir. 2012) (citing cases).

With regard to the second inquiry, for section 1500 to apply, the two suits must also be "for or in respect to" the same claim. The Supreme Court has held that "[t]wo suits are for or in respect to the same claim . . . if they are based on *substantially the same operative facts*, regardless of the relief sought in each suit," *Tohono*, 563 U.S. at 317 (emphasis added), or the legal theories asserted, *Keene*, 508 U.S. at 212. "Determining whether two suits are based on substantially the same operative facts 'requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit.'" *Trusted Integration*, 659 F.3d at 1164 (quoting *Keene*, 508 U.S. at 210). "Importantly, the legal theories underlying the asserted claims are irrelevant to this inquiry." *Brandt*, 710 F.3d at 1374 (citing *Trusted Integration*, 659 F.3d at 1164). Rather, in applying section 1500, this Court is to "compare the operative facts asserted at the time the two complaints were filed." *Cent. Pines*, 697 F.3d at 1364.

Here, both inquiries are easily satisfied. First, Mr. Burke filed his complaint and his written consent to be part of a collective action in this Court on July 8, 2024. ECF No. 1; ECF No. 1-2 at 37. But before those filings in the instant action, Mr. Burke appealed a CBCA decision to the Federal Circuit on October 5, 2023, and the Federal Circuit issued a decision on that appeal on October 25, 2024, with the mandate issuing on December 16, 2024. *See* Notice of Docketing, *Burke*, No. 24-1019 (Fed. Cir. Oct. 5, 2023), ECF No. 1-1; *Burke*, 2024 WL 4579346, at *1; Mandate, *Burke*, No. 24-1019 (Fed. Cir. Dec. 16, 2024), ECF No. 26. Therefore, Mr. Burke's complaint and collective action consent were filed in this Court while the appeal of his CBCA claim was pending in the Federal Circuit, satisfying the first element of the jurisdictional bar imposed by section 1500.

Second, Mr. Burke's case before the Federal Circuit was based on the same operative facts as his claims in the instant case; therefore, the cases are "for or in respect to the same claim." In fact, not only did Mr. Burke's claims before the Federal Circuit and in this case arise out of the same operative facts, both suits are, in part, for the same relief under the FLSA. *Compare John Douglas Burke v. Dept. of Health and Hum. Servs.*, CBCA 7492, 23-1 BCA ¶ 38,304 ("[C]onsistent with the provisions and requirements of the Fair Labor Standards Act . . . I seek back pay . . . [and] compensation for lost benefits . . . ." (quoting Notice of Appeal, Document B at 4)), *with* ECF No. 1 ¶ 149 ("Based on the foregoing, Named Plaintiffs . . . were

employees of the Defendant's agencies and organizations and are entitled to [back pay and benefits], [and] any other relief provided by the FLSA . . . ."). Indeed, the underlying claim from his case in the Federal Circuit makes clear that what Mr. Burke sought both there and here are one in the same: "I am filing this claim contending that I was misclassified as an independent contractor when the economic reality was that I functioned as an employee and should therefore have been classified as the latter." *Burke*, CBCA 7492, 23-1 BCA ¶ 38,304. In short, the claim at issue in Mr. Burke's litigation that he appealed to the Federal Circuit is based not only on the same operative facts but seeks the same relief as he seeks here.

Moreover, even if Mr. Burke were to posit that he could not have been seeking the same relief both here and before the Federal Circuit because relief under the FLSA was outside of the circuit's jurisdiction in that appeal, both this case and the Federal Circuit appeal are nonetheless based on the same operative facts. Both Mr. Burke's appeal and the instant case are based on purchase order agreements with NIH, under which he worked until September 30, 2021. *See Burke*, 2024 WL 4579346, at *1; ECF No. 1 ¶ 43–47; *see also* ECF No. 1-1 at 10–13. And even if Mr. Burke attempted to frame his claims based on these purchase orders as a contract dispute in his Federal Circuit appeal rather than as an FLSA claim, his appeal centered on the argument that "he actually worked as a personal services contractor[] and thus should have been paid like a federal employee rather than an independent contractor." *Burke*, 2024 WL 4579346, at *1; *see also* Burke, CBCA 7492, 23-1 BCA ¶ 38,304 ("Mr. Burke . . . assert[ed] that, while working under his purchase orders, he was effectively serving as a federal civil service employee and that, rather than the hourly rates at which he was compensated under his contracts, he was entitled to receive the salary and benefits of a federal civil service employee."). Mr. Burke presents precisely the same arguments here (albeit repackaged solely as an FLSA claim rather than combined with a Contract Disputes Act ("CDA") claim) and uses the same operative facts as support. What is more, Mr. Burke himself concedes that his claims in this case and his appeal in the Federal Circuit are based on the same operative facts by arguing that the CDA claim underlying that appeal should constitute a defective pleading for equitable tolling purposes in this Court. *See* ECF No. 1 ¶ 178; ECF No. 2 at 5. In fact, Mr. Burke went as far as attaching his CDA claim and related materials to the complaint in this case. *See* ECF No 1-1 at 1–9. In sum, Mr. Burke's appeal of the CBCA decision was pending at the time the present case was filed in this Court, and the earlier-filed appeal sought the same relief under the same operative facts; accordingly, the Court is precluded from exercising jurisdiction over Mr. Burke's claims by 28 U.S.C. § 1500.

Finally, in the alternative, even if the Court had jurisdiction over Mr. Burke's claims, it is likely that the Court would have been forced to dismiss them as barred by res judicata. The Court refrains from making that determination here solely because the Court does not have jurisdiction to make such a determination. *See Gustafson v. United States*, 27 Fed. Cl. 451, 452 n.1 (1993) ("[B]ecause this court concludes that, in any event, it lacks jurisdiction over the instant action, the court will not ask the parties to expend the additional resources required for further briefing [concerning a res judicata issue]. Hence, the court will dismiss plaintiffs' complaint for lack of jurisdiction and will not reach the res judicata issue."). As discussed more fully below with regard to Ms. Ruberandinda, Mr. Burke's claims satisfy the three elements of claim preclusion. First, Mr. Burke's CDA claim involved the same parties as this litigation. *Compare* ECF No. 1 at 1, *with Burke*, 2024 WL 4579346, at *1. Second, the Federal Circuit

affirmed the CBCA on appeal, constituting a final judgment on the merits. *Burke*, 2024 WL 4579346 at *3. Third, as stated above in the Court's section 1500 analysis, Mr. Burke's claims here and his claims before the CBCA are based on the same set of transactional facts. Accordingly, it would appear that if the Court possessed subject matter jurisdiction, Mr. Burke's claims would have been dismissed pursuant to RCFC 12(b)(6) as they satisfy the three elements of claim preclusion.

### 3.    Ms. Ruberandinda's Claims Are Precluded by an Earlier Judgment.

Because Ms. Ruberandinda's claims are precluded by an earlier judgment of the PSBCA, they must be dismissed. The doctrine of claim preclusion "refers to 'the effect of foreclosing any litigation of matters that never have been litigated, because of a determination that they should have been advanced in an earlier suit.'" *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1267 (Fed. Cir. 2008) (quoting 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4402 (2d ed. 2002)). "The doctrine is properly applied to the final judgment of an administrative agency, such as a board of contract appeals, that 'is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" *Id.* at 1268 (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). "As claim preclusion rests on a final judgment on the merits, it can quite properly and naturally be raised via a merits-based RCFC 12(b)(6) motion." *Chisolm v. United States*, 82 Fed. Cl. 185, 193 (2008), *aff'd*, 298 F. App'x 957 (Fed. Cir. 2008) (citations omitted). In deciding whether a claim is precluded under RCFC 12(b)(6), the Court "may look outside the complaint and 'consider matters incorporated by reference or integral to the claim.'" *Bowers Inv. Co., LLC v. United States*, 104 Fed. Cl. 246, 258 (2011), *aff'd*, 695 F.3d 1380 (Fed. Cir. 2012) (quoting *Kawa v. United States*, 77 Fed. Cl. 294, 307 (2007)). "Under the doctrine of *res judicata* (or claim preclusion), '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003) (alteration in original) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). Accordingly, to prevail, "the party asserting the bar must prove that (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Ammex, Inc.*, 334 F.3d at 1055 (citing cases).

Here, the government meets its burden to satisfy the three elements of claim preclusion. First, the parties are identical or in privity in both proceedings. *Compare* ECF No. 1, *with* ECF No. 1-1 at 189 (listing Ms. Ruberandinda and Globe Express Trucking Inc.[2] as appellants and the United States and USPS as respondents). Second, both cases arise from Ms. Ruberandinda's performance of the same contract with USPS for delivery of mail in Graham, Texas in October 2023. *Compare* ECF No. 1 ¶ 77, *with* ECF No. 24-1 at 32–34. Indeed, Ms. Ruberandinda herself advances the argument that both actions rest on the same operative facts by asserting that her PSBCA appeal constitutes a defective pleading that should toll the limitations period in this

---

[2] Ms. Ruberandinda is the principal of Global Express Trucking Inc. *See* ECF No. 1-1 at 186. Ms. Ruberandinda contracted with USPS through this entity to perform the contract at issue. *Id.* at 188.

case. *See* ECF No. 2 at 5 ("Plaintiff Ruberandinda and Plaintiff Burke have both filed 'defective pleadings' trying to enforce their rights under contract, to no avail . . . . Plaintiff Ruberandinda filed an appeal with the USPS appeal board after the Postmaster terminated her contract . . . ."). Finally, the PSBCA dismissed Ms. Ruberandinda's case with prejudice, ECF No. 24-1 at 53, constituting a final judgment on the merits, *see Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1230 (Fed. Cir. 2006) ("A dismissal with prejudice is a judgment on the merits for purposes of claim preclusion.").

In response, Ms. Ruberandinda asserts that the government's claim preclusion argument "defies logic" because the PSCBA ruled on non-FLSA related claims; thus, her FLSA claims should survive. ECF No. 30 at 26. However, because claim preclusion turns on whether "the second claim is based on the same set of transactional facts as the first" and not the legal theory presented, Ms. Ruberandinda's argument is misplaced. *Ammex*, 334 F.3d at 1055. A party is only "permitted to split claims if, for example, the two claims involve different sets of transactional facts." *Phillips/May*, 524 F.3d at 1271 (citing *Fla. Power & Light Co. v. United States*, 198 F.3d 1358, 1360–61 (Fed. Cir. 1999)). But, as discussed above, Ms. Ruberandinda's contract claim and her FLSA claim arise out of the same set of transactional facts, as Ms. Ruberandinda herself admits. *See* ECF No. 2 at 5. Moreover, as the government observes, Ms. Ruberandinda chose to pursue her claims at the PSBCA, a forum of more limited jurisdiction than this Court. ECF No. 24 at 25. In fact, Ms. Ruberandinda was informed in the contracting officer's final decision terminating her contract for default that she had the option to appeal that decision either to the PSCBA *or* this Court. *See* ECF No. 24-1 at 51 ("Alternatively, you may bring an action directly in the United States Court of Federal Claims within twelve months from the date you receive this decision."). "Claim preclusion does not turn on whether the first court chosen had jurisdiction as expansive as a later one. All that matters is that plaintiff . . . had the *opportunity* to litigate both claims in a court of competent jurisdiction . . . but instead chose to split them." *Smith v. Horner*, 846 F.2d 1521, 1524 n.3 (D.C. Cir. 1988) (emphasis in original) (citations omitted). Stated differently, "if there was a forum in which all claims arising out of the single transaction could have been brought, and the plaintiff chooses a forum of limited jurisdiction instead, then the plaintiff's other claims are barred by the doctrine of claim preclusion, because the other claims could have been brought in the forum of general jurisdiction." *Staats v. Cnty. of Sawyer*, 220 F.3d 511, 516 (7th Cir. 2000). The Federal Circuit has confirmed the same. *See Phillips/May*, 524 F.3d at 1271 ("[Plaintiff] was obligated to prosecute its claims in the same proceeding . . . . Only its own strategic choice prevented the joinder of all claims."). Here, Ms. Ruberandinda had a "full and fair opportunity to litigate" her original claim in this Court, *Montana v. United States*, 440 U.S. 147, 153 (1979); she chose not to avail herself of this opportunity and is, therefore, precluded from bringing her claim here based on the same transactional facts as her original claim.

Beyond asserting that the government's argument "defies logic," ECF No. 30 at 26, Ms. Ruberandinda responds to the government's assertion that she is "precluded from bringing new legal theories in a forum that she previously chose to avoid," ECF No. 24 at 25, by simply stating that:

> To advance this idea, Defendant points to [*Ammex*, 334 F.3d at 1055] . . . . But[] *Ammex* defeats the government's argument, not helps it. The case involved Ammex

13

I and Ammex II, which were suits between the same two parties and in the same tribunal. "It is undisputed that the first two elements are present: The parties (Ammex and the government) are identical in both actions, and the prior litigation resulted in a valid final judgment on the merits." [*Id.* at 1056.] But as to the third element, the Federal Circuit ruled:

> the claims are sufficiently different because in the prior lawsuit, Ammex claimed, upon the administrative record, that Customs's interpretation of 19 U.S.C. § 1577(a)(1) was not in accordance with law, and the current claim is whether the IRS's determination that Ammex's fuel must be taxed under 26 U.S.C. § 4081 precludes it from qualifying as "duty-free merchandise" under 19 U.S.C. § 1555(b)(8)(D).

[*Id.*] Certainly, if the Federal Circuit found this nuanced difference sufficient to defeat claim preclusion, then contract claims are sufficiently different from FLSA claims, especially when neither Burke's nor Ruberandinda's tribunal reached the merits of any FLSA claims.

ECF No. 30 at 26–27 (cleaned up). Essentially, Ms. Ruberandinda's response is to dispute *Ammex*'s applicability to this case.[3] However, as the government notes, it cited to *Ammex* for its legal standard—the three elements of claim preclusion—rather than its factual analysis. *See* ECF No. 33 at 15. Even more fundamentally, Plaintiffs' "response" is completely nonresponsive to the government's substantive point that "[w]hen a forum of broad jurisdiction is available, but a plaintiff pursues relief in a forum that can entertain only certain legal theories, the plaintiff is precluded from later bringing new legal theories based on the same set of facts in the forum of broader jurisdiction." ECF No. 24 at 24 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24 & cmt. g (1982); *id.* § 25; *Staats*, 220 F.3d at 516). Accordingly, Ms. Ruberandinda waives any response to the government's argument on this point.[4]

---

[3] In a different portion of the response brief, Plaintiffs comment on *Staats* by stating: "But [the Seventh Circuit] reversed the District Court's summary judgment ruling based on claim preclusion, because the issues raised there were distinct enough to bar such a ruling. Further, there is no issue preclusion, because the CBCA did not rule on Mr. Burke's status as an employee for FLSA purposes." ECF No. 30 at 8–9 (internal citations omitted). There too, Plaintiffs fail to respond to the government's argument regarding the preclusive effect of choosing a forum of limited jurisdiction over a forum that could hear all of his or her claims.

[4] *Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290, 1305 (Fed. Cir. 2021) ("An issue that is merely alluded to and not developed as an argument in a party's brief is deemed waived."); *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("[A] party waives arguments based on what appears in its brief."); *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) ("Judges are not expected to be mindreaders[;] . . . a litigant has an obligation 'to spell out its arguments squarely and distinctly' or else forever hold its peace.'" (quoting *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988))).

But even leaving waiver aside, Ms. Ruberandinda's own characterization of *Ammex* is incorrect. In *Ammex*, the Federal Circuit affirmed the Court of International Trade based on a "distinction between the issue raised in *Ammex I . . .* and the separate and distinct issue" raised in *Ammex II.  Ammex*, 334 F.3d at 1057. Simply put, the issues in *Ammex I* were different from the issues in *Ammex II*—and thus not preclusive—because the operative facts giving rise to *Ammex II* occurred *after* the decision in *Ammex I.  Id.* ("The factual premise of the lawsuit in *Ammex II*, however, differs from the prior one because the application of federal taxes to gasoline and diesel fuel, preempting such fuel from qualifying as 'duty-free merchandise,' is a new fact which was not a part of *Ammex I*."); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. f ("Material operative facts occurring *after* the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first." (emphasis added)). Ms. Ruberandinda does not allege that the operative facts at issue here arose after PSBCA's decision and, therefore, her attempt to rely on *Ammex* for support is misplaced.

The government satisfies its burden to establish the three elements of claim preclusion. Therefore, the Court dismisses Ms. Ruberandinda's claims under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

### 4.    Plaintiffs Jordan and Greene's Claims Are Barred by the FLSA's Statute of Limitations.

In the complaint, Plaintiffs Jordan and Greene assert claims for willful misclassification while working for USAGM. ECF No. 1 ¶¶ 5–10, 18–19. The government contends that these claims are time-barred. *See* ECF No. 24 at 11. Under the FLSA, the statute of limitations for most claims is two years, unless an employer commits a willful violation, which extends the period to three years. 29 U.S.C. § 255(a). Plaintiffs Jordan and Greene plausibly alleged that USAGM willfully violated the FLSA. *See, e.g.* ECF No. 1 ¶ 58 ("[T]he OIG determined that the USAGM misclassified Class Members in knowing violation of the law[,] . . . [but] [e]ven after the OIG's findings, USAGM refused to rectify its wrongs and continued to use purchase orders and vendor agreements to obtain personal services via contract until July or August of 2020."). Accordingly, the Court applies the longer, three-year statute of limitations for willful violations in deciding the government's motion to dismiss Plaintiffs Jordan and Greene's claims. As the Court recently held in *Lambro*, a collective action is "commenced" for the purposes of the statute of limitations as to any named plaintiff when that plaintiff files a complaint *and* his or her written consent. *See Lambro*, 175 Fed. Cl. at 548. Here, Plaintiffs Jordan and Greene commenced their actions on July 8, 2024, and July 22, 2024, respectively. *See* ECF No. 1-2 at 39; ECF No. 10 at 5.

However, even applying the FLSA's longer, three-year statute of limitations for willful violations, Plaintiffs Jordan and Greene's claims are nonetheless time-barred. Their last claims accrued when USAGM converted their purchase order agreements to personal services contracts in July or August 2020, four years before their actions here commenced. *See* ECF No. 1 ¶¶ 58, 110–11. Recognizing as much, Plaintiffs Jordan and Greene put forth several theories to attempt to bring their claims within the statute of limitations: relation back, equitable tolling, accrual

suspension, and equitable estoppel.  For the following reasons, their efforts fail, and Plaintiffs Jordan and Greene's claims are dismissed as time-barred.

>   **a.    Relation back**

First, Plaintiffs Jordan and Greene contend that "[t]he Court should toll all the named and opt-in Plaintiffs[' claims] back to 2018" due to the 2021 filing date in *Lambro*.  ECF No. 2 at 4, 6 (emphasis omitted); *see* Complaint, *Lambro*, 21-cv-1447 (Fed. Cl. Jan. 28, 2021), ECF No. 1. In support of this argument, they reference an outstanding motion to relate back filed in that case.  *See* ECF No. 2 at 8; Third Motion to Amend Pleadings, *Lambro*, 21-cv-1447 (Fed. Cl. June 18, 2024), ECF No. 58.  Plaintiffs Jordan and Greene assert that "had this court not erred by dismissing Mr. Lambro's claims, then Mr. Lambro could have amended his complaint in September 2022 to include other plaintiffs and defendants assuming he was able to clear the low 'logical relationship' bar set out by the courts."  ECF No. 30 at 13.  Thus, according to Plaintiffs Jordan and Greene, their claims here should either be consolidated in the still-pending *Lambro* case or should relate back to the complaint in *Lambro*.  *Id*. at 15–16.  The government responds that the claims asserted here cannot relate back to *Lambro* for several reasons.  *See* ECF No. 24 at 12–13.  First, "this case is a separate action, not an amendment to Mr. Lambro's other case, so the relation-back doctrine is inapplicable."  *Id*. at 12.  Second, Plaintiffs Jordan and Greene lack an identity of interest with Mr. Lambro.  *Id*.  Finally, Mr. Lambro's initial complaint did not mention the possibility of new named plaintiffs, and "[a]dding new plaintiffs . . . prejudices the United States by 'requir[ing] additional discovery.'"  *Id*. at 13 (alteration in original) (quoting *Cooke v. United States*, 79 Fed. Cl. 741, 742–43 (2007)).

The government is correct.  None of the plaintiffs, including Plaintiffs Jordan and Greene, can apply the relation back doctrine to these two separate proceedings.  *See* ECF No. 24 at 12 (citing to *Lucchesi v. Experian Info. Sols., Inc.*, 226 F.R.D. 172, 174–75 (S.D.N.Y. 2005) ("The Federal Rules of Civil Procedure contemplates the relation back of pleadings only in the context of a single proceeding.")).[5]  RCFC 15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"  And the Federal Circuit has permitted an amendment under RCFC 15(c) to "overcome the government's challenge based upon the . . . statute of limitations" when the amended pleading "sufficiently relates back to [the] original complaint."  *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1370 (Fed. Cir. 2004).  Plaintiffs' problem, of course, is that they are not seeking to amend the complaint in *Lambro*; rather, they filed an entirely new case and seek to have the complaint in that case relate back to the filing date in *Lambro*.  But as cases analyzing Federal Rule of Civil Procedure 15(c) agree, "a separately filed claim, as opposed to an amendment or a supplementary pleading, does not relate back to a previously filed claim."  *Benge v. United States*, 17 F.3d 1286, 1288 (10th Cir. 1994) (citing *Pipkin v. United States Postal Serv.*, 951 F.2d 272, 274 (10th Cir. 1991); FED. R. CIV. P. 15).  This is because a second complaint starts a new case and is not an "amendment" to an existing complaint; it is a separate filing.  *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006)

---

[5] RCFC 15(c), the rule in this Court governing relation back, is nearly identical to its Federal Rules of Civil Procedure counterpart.

("O'Donnell's second complaint does not 'relate back' to her first complaint because her second complaint was not an 'amendment' to her first complaint, but rather a separate filing." (citing FED. R. CIV. P. 15(c)(2))); *accord City of New York v. FedEx Ground Package Sys., Inc.*, 351 F. Supp. 3d 456, 475 (S.D.N.Y. 2018) ("This is so because Rule 15 only empowers this Court to allow amendments to a pleading to relate back to the original pleading in that case. It does not enable pleadings in new cases to relate back to events in other, separately filed cases.").

Plaintiffs seem to acknowledge this problem and conceded this point in their response to the government's motion:

> The government argues that Messrs. Jordan and Greene are not entitled to the relate back doctrine, because they are not part of Mr. Lambro's case. Def's Mot. at 12. Defendant cites to *Lucchesi* to support its position. [*Id.* (citing *Lucchesi v. Experian Info. Sols., Inc.*, 226 F.R.D. 172, 174–75 (S.D.N.Y. 2005)).] The government makes the point that Mr. Lambro made in his motions to amend and reconsider. [*Lambro*, 21-cv-1447 (Fed. Cl. June 18, 2024), ECF No. 58 at 1, 5, 8; ECF No. 61 at 2–4; ECF 63 at 4; ECF 68 at 1–2, 9–11].

ECF No. at 30 at 15 (cleaned up). In short, Plaintiffs apparently concede this argument by observing that Mr. Lambro made the same point that the government makes here in his separate case before this Court.[6] Moreover, Plaintiffs fail to make any argument, outside of this observation, responding to the government's argument that relation back only applies to an amended complaint in a single proceeding—not separate proceedings.

In reality, Plaintiffs' relation back argument is better analyzed as an ongoing gripe with the Court than as an actual legal argument. Almost all of the plaintiffs in this litigation attempted to join *Lambro* through a motion to amend the pleadings. *Compare* ECF No. 1 at 1 (listing Plaintiffs Jordan, Greene, Lambro, the Justices, Burke, and Ruberandinda), *with* Proposed Third Amended Complaint, *Lambro*, 21-cv-1447 (Fed. Cl. June 18, 2024), ECF No. 58-1 at 1 (listing Suzette Justice, Steven Justice, John Burke, and Marie-Pascale Ruberandinda as named plaintiffs), *and Lambro*, 21-cv-1447 (Fed. Cl. June 18, 2024), ECF No. 58 at 10 (including Russell Greene as an opt-in plaintiff). The government then moved to stay its deadline to answer or otherwise respond to the second amended complaint in *Lambro* while the Court considered whether to allow Mr. Lambro to amend his complaint a third time. Motion to Stay Deadline to Answer, *Lambro*, 21-cv-1447 (Fed. Cl. June 20, 2024), ECF No. 59. The Court, however, had ordered the parties to file a joint status report proposing a schedule for further proceedings in the case, wanting the parties to first focus on producing that schedule rather than pursuing briefing on amendments to the second amended complaint. *See* Joint Status Report Order, *Lambro*, 21-cv-1447 (Fed. Cl. June 13, 2024), ECF No. 57. While the Court initially did not take issue with

---

[6] It is not altogether clear that this statement is a concession, but that is the best read of what Plaintiffs state here. To the extent that it is not a concession regarding relation back, it is a waiver of any response, as all Plaintiffs do is acknowledge the government's argument and acknowledge that Lambro made the same argument. *Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58 (2021) ("A party's failure to raise an argument in an opening or responsive brief constitutes waiver.").

Mr. Lambro's motion for leave, once it examined the motion and discovered it was replete with typographical errors and thus appeared to be a draft, it stayed proceedings until the parties produced a joint status report proposing a further schedule for proceedings.  *See* Order Staying Briefing, *Lambro*, 21-cv-1447 (Fed. Cl. June 20, 2024), ECF No. 60.  In this order, the Court provided that the joint status report could include a schedule for briefing on the motion for leave so long as Mr. Lambro refiled a final version of the motion, rather than a draft.  *See id.*  Mr. Lambro then filed a motion asking for reconsideration of the Court's order, and, prior to the Court's ruling on that motion, Plaintiffs here filed the instant action as a separate case from the *Lambro* litigation.  *See* First Motion for Reconsideration, *Lambro*, 21-cv-1447 (Fed. Cl. June 21, 2024), ECF No. 61; ECF No. 1 (filed July 8, 2024); Order Denying Motion for Reconsideration, *Lambro*, 21-cv-1447 (Fed. Cl. July 23, 2024), ECF No. 64.

Plaintiffs were certainly entitled to file this separate action, or they could have simply waited for the Court to rule on a final version of their motion to amend the pleadings in *Lambro* and, if leave to amend was granted, sought to relate the amendment back to the original filing date in *Lambro*.  Moreover, because *Lambro* was filed as a collective action, they could have also filed their written consents to be part of the collective while they awaited the Court's ruling on the motion to amend.  But what Plaintiffs were not entitled to do was file this new action *and* relate it back to the filing date in *Lambro* as though it was an amendment to the complaint in *Lambro*.  This type of gamesmanship is not permitted by the Court's rules, especially considering that Plaintiffs failed to file the required notice of a directly related case.  RCFC 40.2(a)(1).  If Plaintiffs really believe that the complaint in this case should relate back to the complaint in *Lambro*, then this case would necessarily be directly related to *Lambro*.

What is more, beyond RCFC 15(c) not permitting the filing date in one action to relate back to the filing date in a separate action, Plaintiffs fail the test for relation back in any event.  When an amendment to a complaint seeks to relate back to the claims of a new party plaintiff, the Court considers whether: "1) the claim arose out of the 'same conduct, transaction, or occurrence' as the original complaint; 2) the new plaintiff shares an 'identity of interest' with the original plaintiff; 3) the defendant had 'fair notice' of the new plaintiff's claim; and 4) the addition of the new plaintiff causes the defendant prejudice."  *Big Oak Farms, Inc. v. United States*, 141 Fed. Cl. 482, 489 (2019); *accord Baldwin Park Cmty. Hosp. v. United States*, 231 Ct. Cl. 1011, 1012 (1982) ("This court has stated that relation back is appropriate where the amended pleading relates to the same conduct, transaction, or occurrence set forth in the original pleading.  The rationale for this rule is that the opposite party had received timely notice of the claim asserted against him.").  But Plaintiffs failed to provide the Court with any meaningful argument as to how they satisfy these criteria for relation back.  Rather, Plaintiffs merely state that:

> Defendant also argues that that relation back is not available here because "their interests in their individual claims are not identical."  Def's Mot. at 12[[citing *Big Oak Farms*, 141 Fed. Cl. at 490)].  First, and most obviously, *Big Oaks* is a class action, not a collective action.  That case applied the more stringent standard of Rule 23 versus the more liberal standard of "permissive joinder" under Rule 20.  *Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1368–69 (Fed. Cir. 2019)[.]

ECF No. 30 at 16 (cleaned up).  Missing is any argument as to *how* Plaintiffs satisfy *any* of the criteria for relation back, especially the "identity of interest" prong that the government focuses on in its motion to dismiss.  *See* ECF No. 24 at 12 (arguing the parties do not share an identity of interest); *see also Oztimurlenk v. United States*, 162 Fed. Cl. 658, 686 (2022) ("Given Plaintiffs' failure to respond to the government's specific arguments and cited evidence, the Court has little choice but to side with the government.").  Instead, Plaintiffs seem to be distracted by the fact that *Big Oaks* was a class action, whereas this is a collective action—an irrelevant point because the only purpose for which the government cited *Big Oaks* was for the applicable legal standard. *See* ECF No. 24 at 12.  However, Plaintiffs needed to explain, *inter alia*, why they share an identity of interest with *Lambro* to preserve this argument, which they failed to do.

### b.    Equitable tolling

Plaintiffs also argue that they are entitled to equitable tolling of their claims (1) due to "defective pleadings" filed in different cases, and (2) because the government fraudulently concealed the existence of their claims because Plaintiffs were, *inter alia*, "constructively barred" from discussing their potential claims with one another.  *See* ECF No. 2 at 10–12; *see, e.g.*, ECF No. 30 at 11 ("The Plaintiffs in Jordan have all alleged that the government engaged in active misleading [] contract language . . . .").  To begin with the simpler of Plaintiffs' arguments, Plaintiffs Jordan and Greene assert that they are entitled to equitable tolling back to 2012, three years before the complaint was filed in *Lee v. United States*, 127 Fed. Cl. 734 (2017). ECF No. 2 at 10–11.  Plaintiffs claim that the complaint in *Lee* was a "defective pleading" that constitutes an attempt by Plaintiffs Jordan and Greene to pursue their rights, such that the limitations periods should now be tolled.  ECF No. 2 at 12 ("For the putative class members connected to USAGM, Plaintiffs ask that the Court equitably toll the statute back to June 2012, three years before the previous USAGM class filed their suit in *Lee*.").  Separately, Plaintiffs ask that "[f]or the putative class members working for the other agencies," the statute be tolled "back to January 2018, three years before the filing of [*Lambro*]."  ECF No. 2 at 12.

The government responds that because the statute of limitations is jurisdictional, equitable tolling is not available against the United States.  ECF No. 24 at 9–10.  And even if equitable tolling were available against the United States, the government argues that it is unavailable for Plaintiffs Jordan and Greene because the *Lee* complaint does not qualify as a defective pleading.  *Id.* at 13–14.  Moreover, according to the government, even if the *Lee* complaint were a defective pleading, Plaintiffs still fail to demonstrate the requisite extraordinary circumstances or the diligence to merit tolling the limitations period.  *Id*. at 11–12.  As the Court acknowledged in *Lambro*, "[t]he question of whether equitable tolling is allowed under the FLSA has not been resolved by the Supreme Court or the Federal Circuit."  *Lambro*, 175 Fed. Cl. at 548 (alteration in original) (quoting *Moreno v. United States*, 82 Fed. Cl. 387, 400 (2008)). However, here, as in *Lambro*, the Court need not decide whether the FLSA's statute of limitations is jurisdictional because Plaintiffs plainly fail to demonstrate that they are entitled to tolling.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  These two

components operate as "elements, not merely factors of indeterminate or commensurable weight." *Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 256 (2016) (internal quotations omitted). The diligence prong looks at "those affairs within the litigant's control [while] the extraordinary-circumstances prong . . . cover[s] matters outside its control." *Id*. at 257. "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland v. Fla.*, 560 U.S. 631, 653 (2010) (first quoting *Lonchar v. Thomas*, 517 U.S. 314, 326 (1996); then quoting *Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008)). Thus, a litigant's defective pleading can, in some circumstances, justify equitably tolling the statute of limitations. *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period . . . ." (footnote omitted)). Equitable tolling may also be available "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* at 96. However, equitable tolling is not available in instances in which a claimant "failed to exercise due diligence in preserving his legal rights," and "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Id*. For example, a mistaken legal interpretation, *Menominee*, 577 U.S. at 257–58, or a miscalculation that leads to a missed filing deadline, *Lawrence v. Fla.*, 549 U.S. 327, 336–37 (2007), do not merit tolling.

To begin with, the complaint in *Lee* is not a defective pleading that can toll the limitations period in this case. Most obviously, Plaintiffs here were not plaintiffs in *Lee*, and *Lee* was not an FLSA case. *See* 127 Fed. Cl. at 736 (asserting claims under the Back Pay Act for Plaintiffs Lee, Ryan, Nariman, and Peach). Most crucially, even if the Court were to toll the statute of limitations to the filing date in *Lee*, Plaintiffs' claims would still be time-barred. *Lee* was filed on December 21, 2015, and the mandate on appeal was issued on September 4, 2018, *see* Complaint and Mandate, *Lee*, 127 Fed. Cl. 734 (15-cv-1555), ECF Nos. 1 & 43. Therefore, even with tolling, Plaintiffs would have needed to file their claims within three years of the issuance of the mandate in *Lee* to preserve their claims. *See Checo v. Shinseki*, 748 F.3d 1373, 1379 (Fed. Cir. 2014) (discussing that the statute of limitations clock "is 'stopped' during the extraordinary circumstance period and starts ticking again only when the period is over"). Moreover, as explained above, Plaintiffs cannot rely on relation-back to *Lambro* and equitable tolling in *Lee* together to make their claims timely. Furthermore, to the extent Plaintiffs make a separate argument that the complaint in *Lambro* should serve as the basis for equitable tolling, they cannot avail themselves of that filing date because they were not plaintiffs in *Lambro*. *See Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 514 (2017) ("If the filing of a class action made all subsequent actions by putative class members timely, there would be no need for tolling at all").

Next, while equitable tolling may be warranted when a litigant "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," here, Plaintiffs fail to meet their burden to show that the government fraudulently concealed their claims. *Irwin*, 498 U.S. at 96. To allege fraudulent concealment, a litigant must satisfy the heightened requirements of RCFC 9(b) and identify "evidence indicating that defendant actively had concealed its wrongdoing; a mere failure to reveal facts is insufficient." *Carr v. United States*, 61 Fed. Cl. 326, 331 (2004) (citing *Simmons Oil Corp. v. Tesoro Petrol. Corp.*, 86 F.3d 1138, 1142 (Fed. Cir. 1996)). Thus, Plaintiffs bear the burden to "show that [the government] has

concealed its acts with the result that plaintiff[s] w[ere] unaware of their existence . . . ." *Christofferson v. United States*, 64 Fed. Cl. 316, 326 (2005) (alterations in original) (quoting *Japanese War Notes Claimants Ass'n v. United States*, 178 Ct. Cl. 630, 634 (1967)). Concealment requires the showing of "some trick or contrivance intended to exclude suspicion and prevent inquiry," as opposed to mere silence. *LaMear v. United States*, 9 Cl. Ct. 562, 570 (1986) (quoting *Wood v. Carpenter*, 101 U.S. 135, 143 (1879)). Plaintiffs' complaint and briefs contain several references to "trickery" and concealment by the government. *See, e.g.*, ECF No. 30 at 19 ("[T]he government actively 'tricked' [Plaintiffs] into not filing . . . by way of policy statements and contract that plaintiffs and opt-ins were not entitled to FLSA protections."). But Plaintiffs' conclusory statements are not supported by plausible factual allegations.

Most crucial, and applicable to every plaintiff in this case, is the fact that the government did not obfuscate the material facts on which Plaintiffs base their claims. The FLSA violations alleged are that Plaintiffs worked over forty hours a week and were not paid overtime wages as required by the FLSA for employees. *See* ECF No. 1 ¶¶ 7–10, 32–34, 38–41, 49–51, 54–57. Plaintiffs were aware of these facts as they happened—they experienced them firsthand. Importantly, it is the lack of knowledge of facts rather than the understanding of law that can give rise to tolling. *Catawba Indian Tribe of S.C. v. United States*, 982 F.2d 1564, 1572 (Fed. Cir. 1993) ("But in the case before us, all the relevant facts were known. It was the meaning of the law that was misunderstood."). Unfortunately for Plaintiffs, they understood the facts but did not understand the law.

Plaintiffs Jordan and Greene contend that one "trick" that concealed their claims was a certain clause in their contracts with USAGM that allegedly led them to believe that they were contractors without FLSA rights. ECF No. 30 at 20. This clause forbade Plaintiffs Jordan and Greene from "misrepresent[ing] the character of the independent contractual relationship created by [the] Contract." ECF No. 1-1 at 346. However, as the government notes, this argument ignores that it remains undetermined whether Plaintiffs Jordan and Greene are employees under the economic realities test. ECF No. 33 at 4–5; *see Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728–29 (1947) (finding a determination of whether the defendant is an employee to be the first step of an FLSA analysis). Moreover, Plaintiffs Jordan and Greene make a mountain out of a molehill—even if they were to successfully show that they were FLSA employees, their status as independent contractors would not change for non-FLSA purposes. *See Lambro v. United States*, 90 F.4th 1375, 1382 (Fed. Cir. 2024) (alteration in original) ("Notably, the FLSA, by defining employee '[a]s used in this chapter,' does not authorize the creation of an employment relationship for non-FLSA purposes."). For example, even with a favorable ruling here regarding their FLSA claims, Plaintiffs Jordan and Greene would still not be entitled to "employment protections associated with the competitive service and the merit system." *Id.* (citing 5 U.S.C. § 7513(b), (d)). What is more, the contract clause that Plaintiffs Jordan and Greene rely on does not reference the FLSA at all. *See* ECF No. 1-1 at 346. Rather, this clause contains a non-exhaustive list of ways that contractors might "misrepresent[] the character of the independent contractual relationship" created by these purchase order agreements and thereby violate their contracts:

(1) [C]reation of business cards, letterheads, or promotional materials utilizing government logos or other identifiable markings; (2) creation of a web site or

internet blog containing Government/Agency logos, symbols, or other identifiable markings, or purporting to represent the Government/Agency[;] (3) attempting to enter into agreements with third parties purporting to have contractual or other authority to legally bind the Government/Agency.

*Id*. Even when read in the light most favorable to Plaintiffs, these examples indicate concern about contractors representing themselves as agents of the government, rather than evidence of a concerted scheme to "create[] a shroud of secrecy that amounts to 'fraudulent concealment' of the government's illegal misclassification practices." ECF No. 1 ¶ 25 (footnote omitted). Basing their argument on this clause does not plausibly allege concealment of FLSA protections generally or the specific wage and hour requirements at issue in particular. Therefore, Plaintiffs cannot plausibly allege that this misrepresentation clause amounts to "fraudulent concealment" when its underlying purpose is true and reveals no ulterior intent to deceive or mislead.

Plaintiffs also identify the government's use of noncompetitive contracting procedures as a means of fraudulently concealing Plaintiffs' rights under the FLSA. *Id.* ¶ 173. While Plaintiffs contend that such practices contributed to the aforementioned "shroud of secrecy," *id.* ¶ 25, the government is correct when it notes that "[c]ontracting without full and open competition is permitted by 41 U.S.C[.] § 3304 and 10 U.S.C. § 3302 and governed by procedures established in subpart 6.3 of the [FAR]," ECF No. 24 at 15. Given that such practices are legal, it is difficult to understand how the government's use of lawful contracting vehicles and compliance with the FAR rises to the level of a "trick or contrivance intended to exclude suspicion and prevent inquiry." *Wood*, 101 U.S. at 143. And crucially, again, these contracting procedures did not obfuscate the facts in such a way that Plaintiffs "did not and could not have known of" the facts giving rise to their FLSA claims. *See Catawba*, 982 F.2d at 1572.

Next, Plaintiffs ask the Court to consider the effect of government's alleged retaliatory threats of "termination for default from government contracts if [Plaintiffs] suggested they were employees." ECF No. 30 at 11. However, these allegations do not support equitably tolling their claims. Plaintiffs could and should have filed a lawsuit if they believed that they had a claim. Indeed, under the Constitution, the "[t]he right of petition is one of the freedoms protected by the Bill of Rights . . . [and] [t]he right of access to the courts is indeed but one aspect of the right of petition." *Cal. Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Additionally, the FLSA itself explicitly protects the right of employees to vindicate their rights in Court. *See* 29 U.S.C. § 215(a)(3). Moreover, as the government states, the provision at issue "on its face does not prohibit contractors from exercising rights they believe they have under the FLSA." ECF No. 24 at 16. Rather, as explained above, the prohibition on contractors representing themselves as employees indicates a concern with contractors acting as if they represent or can legally bind the agency. *See* ECF No. 1-1 at 346. Accordingly, Plaintiffs cannot argue that these "threats" prevented timely filing when they are clearly shielded from retaliation for asserting their rights in court by the Constitution and the FLSA itself.

Plaintiffs further claim that the statute should be tolled because of the coercive threat of bid-rigging or collusion liability. ECF No. 2 at 11. Plaintiffs assert that "they have been constructively barred from discussing their claims with one another," such that they could not have known to file an FLSA collective action for misclassification. *Id*. (emphasis omitted).

22

However, Plaintiffs are immunized from antitrust liability when they "use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-á-vis their competitors," so long as such efforts do not constitute "sham" litigation. *Cal. Motor Trans.*, 404 U.S. at 511. Specifically in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, the Supreme Court held that "the Sherman Act does not prohibit . . . persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." 365 U.S. 127, 136 (1961). And later, in *California Motor Transportation Co.*, the Supreme Court elaborated that this protection extended to the "right of access to the courts." 404 U.S. at 510. Consequently, Plaintiffs were not "constructively barred" from discussing their potential legal claims with each other, so long as their efforts were not a "sham." *See Pro. Real Est. Invs. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51 ("Under the sham exception, activity 'ostensibly directed toward influencing governmental action' does not quality for *Noerr* immunity if it 'is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor.'" (quoting *Noerr*, 365 U.S. at 144) (omission in original)). Moreover, Plaintiffs concede that bid-rigging liability does not amount to fraudulent concealment of their claims. ECF No. 30 at 20 ("Plaintiffs do not advance the notion that the bid-rigging compliance was created by Defendant for nefarious reasons. Plaintiffs simply point to that statute as another 'deterrent' that prevented them from colluding with one another and learning that they were all being treated badly.") Therefore, Plaintiffs cannot show that some alleged threat of bid-rigging liability prevented them from timely filing this action or amounted to fraudulent concealment.

Plaintiffs then move to an allegation that the government violated 29 C.F.R. § 516.4—a regulation promulgated by the Department of Labor—by failing to post notices explaining the minimum wage provisions of the FLSA. ECF No. 30 at 10–11. However, the Labor Department regulates private employers. Plaintiffs fail to consider that the Office of Personnel Management ("OPM"), not the Labor Department, administers the FLSA for federal employees. 29 U.S.C. § 204(f). Plaintiffs do not point to an equivalent OPM regulation that requires the government to post similar notices regarding government employees' FLSA rights. In short, the government cannot have concealed information from Plaintiffs by failing to comply with a regulation that did not apply to it. *See Doyle v. United States*, 20 Cl. Ct. 495, 501 (1990) (stating that the plaintiffs were not entitled to tolling because, *inter alia*, "[d]efendant was not required to provide further notice to plaintiffs of any future causes of action"). And in any case, Plaintiffs waived this argument by only asserting it in their response to the government's motion to dismiss rather than in their complaint itself. *Jackson v. United States*, 156 Fed. Cl. 738, 743 n.8 (2021) ("Plaintiff cannot amend his complaint via his response brief.").

Additionally, to the extent they properly make this argument, Plaintiffs' contention that the government concealed their claims from them by misclassifying them as contractors is circular. *See* ECF No. 30 at 5 ("VOA actively mislead [sic] Plaintiffs Jordan and Greene, by telling them in their contracts, that 'they were not employees with rights.'" (quoting *Burrell v. Staff*, 60 F.4th 25, 48 (3d Cir. 2023))). Plaintiffs' logic is as follows: misclassification as a contractor in and of itself is sufficient to constitute fraudulent concealment. But, if Plaintiffs' logic were correct, then every misclassification claim would also constitute fraudulent concealment, and, therefore, in every misclassification case, tolling would be available. This

type of reasoning, however, reads the statute of limitations right out of the FLSA because the statute would be tolled in *every* misclassification case. This simply cannot be correct as a basic matter of statutory interpretation. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks omitted))). Accordingly, Plaintiffs must allege more than mere misclassification to demonstrate that their claims were fraudulently concealed and thus warrant tolling.

Finally, even if Plaintiffs could demonstrate that they experienced some "extraordinary circumstance" that impeded timely filing, they fail to show the requisite diligence necessary for equitable tolling. As the government notes, "Mr. Jordan and Mr. Greene, who have the same counsel as Mr. Lambro, advance no explanation as to how or why they were unable to or failed to file complaints at the same time as Mr. Lambro, or at least within two or three years of their work at VOA." ECF No. 24 at 11. In other words, Plaintiffs' counsel was fully aware that he could file claims against the government for misclassification under the FLSA, or he would not have filed a complaint in *Lambro* in the first place. Thus, Plaintiffs controlled the timing of the filing of their claims. Nonetheless, Plaintiffs Jordan and Greene point to confusion as a possible reason as to why they waited to file their cases. *See* ECF No. 2 at 14 ("Plaintiffs also ask this court to rule that the right was 'unknowable'" until "after [the Federal Circuit] remanded the *Lambro* case . . . ."). Although some "confusion" may be understandable, excusable neglect does not warrant tolling. *Irwin*, 498 U.S. at 96 ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."); *see also Menominee*, 577 U.S. at 257–58 (holding that a mistaken interpretation of law does not meet the standard for equitable tolling). Thus, Plaintiffs fail to meet their burden to show that they are entitled to equitable tolling.

### c.    Accrual suspension

While Plaintiffs do not explicitly argue for the application of the accrual suspension rule in their briefs, their arguments—that their rights were "inherently unknowable" until the Federal Circuit's decision in *Lambro* and that the government concealed its unlawful acts—invoke this rule. *See* ECF No. 2 at 13–14. In addition, Plaintiffs framed these arguments in terms of accrual suspension at oral argument. ECF No. 45 at 28:20–29:3. Even though Plaintiffs assert that these arguments apply equally to all named Plaintiffs, most of the allegations made to support these arguments concern Plaintiffs Jordan and Greene. *See* ECF No. 1 ¶ 20–26, 174; *see also* ECF No. 2 at 13–14. Accordingly, the Court analyzes these accrual suspension rule arguments focusing on the allegations concerning Plaintiffs Jordan and Greene.

Plaintiffs argue that their rights as putative FLSA employees were unknowable until the *Lambro* decision. ECF No. 2 at 13–14. Plaintiffs characterize that decision as "an intervening change in law" that warrants tolling the statute of limitations because "it would [have] been futile to file these claims while the position of this court was that 'appointment' was required for federal employment." *Id.* at 13. Plaintiffs assert that "[o]nly after [the Federal Circuit] remanded the *Lambro* case, could [they] be *sure* the right existed and rely on the protections the FLSA provides against retaliation." *Id.* at 14 (emphasis added). Therefore, Plaintiffs ask that the

statute of limitations be tolled for all Plaintiffs and opt-ins from June 13, 2024, when the Federal Circuit remanded this case to this Court after rendering its decision in *Lambro*. *Id*. at 13; Mandate of CAFC, *Lambro*, 21-cv-1447 (Fed. Cl. June 13, 2024), ECF No. 56.

Under the accrual suspension rule, "the running of the statute will be suspended when an accrual date has been ascertained, but plaintiff does not know of his claim." *Japanese War Notes*, 178 Ct. Cl. at 634. However, "the rule is strictly and narrowly applied[.]" *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985). To invoke the rule, the "[p]laintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Japanese War Notes*, 178 Ct. Cl. at 634 (footnote omitted) (quoting *Urie v. Thompson*, 337 U.S. 163, 169 (1949)).

Plaintiffs' arguments are flawed in their premise because their rights were not "inherently unknowable." Here, there was no intervening change in the law. The Federal Circuit did not decide *Lambro* en banc or even indicate that it was changing precedent. *See Metzinger v. Dep't of Veterans Affs.*, 20 F.4th 778, 781 (Fed. Cir. 2021) ("[W]e are bound by prior panel decisions of this court unless and until overturned en banc.") Rather, the Federal Circuit held that the "FLSA does authorize the recognition—solely for the application of the FLSA's own provisions—of an employment relationship between the federal government and those federal government workers who satisfy the FLSA's definitions . . . under the standards long adopted by the courts." *Lambro*, 90 F.4th at 1379. Indeed, in its decision, the Federal Circuit distinguishes its holding in *Lambro* from its holdings in other cases, finding that this Court relied "on [the Federal Circuit's] non-precedential decision in *Guevara v. Immigration and Naturalization Service*, 954 F.2d 733, 1992 WL 1029 (Fed. Cir. Jan. 6, 1992) (unpublished table decision)." *Id*. at 1383. The Federal Circuit further noted that this Court relied on non-FLSA cases to reach its decision. *Id*. at 1378. Thus, by its own terms, the Federal Circuit's decision was not creating new law or overruling existing precedent; rather, it was interpreting the FLSA against the backdrop of its own precedent. In doing so, it found that recognizing individuals—who worked for the government but were not appointed to their positions—as FLSA employees did not conflict with existing precedential case law. *See id*. at 1384 ("[W]e hold that the FLSA authorizes the application of [the ordinary FLSA] standard to federal and non-federal employees alike . . . .").

Moreover, Plaintiffs do not articulate why it was possible for Mr. Lambro to know of his rights and file suit yet impossible for Plaintiffs here to know of their own rights, or, similarly, for the plaintiffs in other cases in this Court that are completely unrelated to this litigation to raise similar claims. *See, e.g., Diaz v. United States*, 156 Fed. Cl. 270, 275 (2021) ("Mr. Diaz alleges that he was classified as an independent contractor, despite being regulated as an employee, and should therefore be reclassified and entitled to protections under the FLSA."); *Tetzlaff v. United States*, No. 15-161C, 2015 WL 7585333, at *8 (Fed. Cl. Nov. 25, 2015) ("Plaintiff also alleges that she was misclassified as an independent contractor, despite being regulated as an employee. She asks the court to reclassify her as an employee, and then award her, *inter alia*, back pay . . . ."). Plaintiffs do not cite to any source of law that holds that, if it may have been difficult to file a lawsuit because a plaintiff was unsure "if the right existed," a court should toll the statute of limitations. This may be because the law does not support Plaintiffs' position.

Simply put, the accrual suspension rule is not as charitable as Plaintiffs assert. For one, "a misunderstanding of the meaning of the law or one's legal rights does not trigger this rule." *Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 62 (2009). Consequently, a plaintiff is not entitled to tolling or suspension of the statute of limitations because of his or her ignorance of the law. *See Menominee*, 577 U.S. at 257–58. Indeed, even the presence of adverse precedent does not automatically lead to suspension or tolling of statute of limitations. *Boling v. United States*, 220 F.3d 1365, 1374 (Fed. Cir. 2000) ("It is true that during the period between the decision in *Ballam* and its subsequent reversal in *Owen*, any claim by the plaintiffs for compensation would have been difficult. However, this difficulty does not justify tolling the statute of limitations."). Accordingly, a plaintiff must seek to vindicate his or her rights in court even if doing so would have been difficult. *See id.* In other words, a litigant "cannot toll or suspend the running of the statute [of limitations] by relying upon the uncertainties of controlling law. It is incumbent upon him to test his right and remedy in the available forums." *See Commc'ns Vending Corp of Ariz. v. Fed. Commc'ns Comm'n*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (quoting *Fiesel v. Bd. of Educ.*, 675 F.2d 522, 524–25 (2d Cir. 1982). Here, Plaintiffs only contend that they could not "be *sure* the right [as FLSA employees] existed . . . ." ECF No. 2 at 14 (emphasis added). But they cannot point to an intervening change in law that would warrant accrual suspension. And again, Plaintiffs cannot explain why it was reasonable for Mr. Lambro to vindicate his rights in court and unreasonable for them to do the same. Thus, Plaintiffs cannot meet their burden to show that the running of the statute of limitations should be suspended under the accrual suspension rule.

Plaintiffs also argue throughout their complaint and briefs that "the government tricked them into believing they were contractors with no FLSA employee rights." ECF No. 30 at 8. For the same reasons discussed above in the Court's analysis of Plaintiffs' equitable tolling arguments, Plaintiffs' argument here is similarly groundless. Accordingly, Plaintiffs cannot invoke the accrual suspension rule to suspend the statute of limitations because of either the Federal Circuit's decision in *Lambro* or because the government "tricked" them into believing that they were not FLSA employees.

### d.    Equitable estoppel

Finally, Plaintiffs assert that the government should be estopped from arguing that Plaintiffs' claims are time-barred because the government argued in *Lambro* "that plaintiffs like Messrs. Greene and Jordan did not have a cause of action based on the economic realities test [because] [t]he government's position then was that appointment was required to create an employment relationship with the government." ECF No. 30 at 14–15 (citations omitted). Furthermore, Plaintiffs allege that the government actively "tricked" them into not filing a complaint through "policy statements and contract [sic] that plaintiffs and opt-ins were not entitled to FLSA protections." *Id.* at 19.

"[E]quitable estoppel is used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute." *Knaub v. United States*, 22 Cl. Ct. 268, 276 (1991) (quoting *Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir. 1981)). "Equitable estoppel requires: (1) misleading conduct, which may include not only statements and actions but silence and inaction, leading another to reasonably infer that

rights will be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted." *Mabus v. Gen. Dynamics C4 Sys., Inc.*, 633 F.3d 1356, 1359 (Fed. Cir. 2011) (quoting *Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.*, 971 F.2d 732, 734 (Fed. Cir. 1992)).  However, "the government may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 60 (1984).  To invoke equitable estoppel against the government, Plaintiffs bear the burden of showing "affirmative misconduct" on the part of the government. *Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000).

Here, the government asserted in good faith that it believed that appointment was necessary to create an employment relationship under the FLSA.  ECF No. 24 at 18.  It is unclear how the government's advancement of this argument in court rises to the level of the "affirmative misconduct" required to estop the government, and Plaintiffs offer the Court little explanation in support of their argument.[7]  Moreover, as the government notes, Plaintiffs' allegations of "policy trickery" appear to be "a restatement of the same . . . allegations of fraudulent concealment . . . ."  ECF No. 33 at 11.  As discussed above in the Court's analysis of Plaintiffs' bases for equitable tolling, this argument fails.  Thus, Plaintiffs cannot claim that the government should be estopped from asserting that Plaintiffs' claims are time-barred.

In sum, Plaintiffs Jordan and Greene fail to demonstrate that they can relate their claims in this case back to the complaint in *Lee* or *Lambro,* that they are entitled to equitable tolling, that the accrual suspension rule applies, or that the government should be equitably estopped from arguing that Plaintiffs' claims are time-barred.  Accordingly, Plaintiffs Jordan and Greene's claims are dismissed because they fall outside the FLSA's statute of limitations.

### 5.    Most of the Justices' Claims Must Be Dismissed Because They Are Barred by the FLSA's Statute of Limitations; However, the Court Defers Ruling on All of Their Claims.

Like Plaintiffs Jordan and Greene, the Justices' claims run headlong into issues with the FLSA's statute of limitations.  But, unlike Plaintiffs Jordan and Greene, the Justices may have at least some claims that survive dismissal.  Recall, the FLSA imposes a three-year statute of limitations for willful violations. 29 U.S.C. § 255(a).  Because Plaintiffs have sufficiently alleged that the government willfully violated the FLSA, the Court applies the three-year statute of limitations in deciding whether the Justices' claims were timely commenced.  *See* ECF No. 1 ¶¶ 36–42, 79.  The Justices' commenced their claims on July 8, 2024, as they filed their written

---

[7] The Court notes that Plaintiffs assert after this argument that "under The Tucker Act, and *John R. Sand & Gravel, Co*, the Court could look back six years (July 2018) for [Plaintiffs] Jordan and Greene's claims."  ECF No. 30 at 15.  The Court is unsure of the relevance of Plaintiffs' argument because the FLSA has a two- or three-year statute of limitations, separate from the general six-year statute of limitations. 29 U.S.C. § 255(a).  Furthermore, the Court is unsure how Plaintiffs' lack of representation until June 2024 factors into its analysis.  ECF No. 30 at 14.  Plaintiffs fail to cite to any source of law that holds that the Court must toll a claim because a litigant is unrepresented.

consents contemporaneously with the complaint. ECF No. 1-2 at 43, 44. The Justices make similar arguments to those made by Plaintiffs Jordan and Greene to assert that their claims are timely. *See* ECF No. 30 at 25–26. However, as explained below, some of the Justices' FLSA claims are barred by the statute of limitations.

The Justices divide their work into two periods: before 2017 when they contracted directly with the SSA, and after 2017 when they worked with companies that the SSA contracted with. *See* ECF No. 24 at 19; ECF No. 1-2 at 15 ¶¶ 3–6, 18 ¶¶ 3–6. As best the Court can discern, the Justices' misclassification allegations regarding violations of the FLSA's wage and hour provisions stem from before 2017, when they contracted directly with SSA. *See* ECF No. 24 at 19. Because this case and the Justices' written consents were filed on July 8, 2024—well after the three-year statute of limitations had run in 2020 or earlier—any claims of FLSA violations prior to 2017 are time-barred, absent tolling or suspension of the statute of limitations. ECF No. 1. Following this logic, the government notes that all the allegations in the complaint "comport with the Justices' work while directly contracting with SSA before 2017[]" and thus are time-barred. ECF No. 24 at 19. In response to this assertion, Plaintiffs only counter that it "is not an accurate reading of the Justices' statements" to say that the "five-dollar rule" for canceled proceedings applied only to the Justices' work before 2017. ECF No. 30 at 25 (subsequently simply instructing the Court to compare paragraphs in the complaint and the declaration which lack any dates). Accordingly, except for their "five-dollar rule" allegations, Plaintiffs waive any argument responding to the government's assertion that "[the Justices'] FLSA allegations derive from work performed in 2017 or earlier." ECF No. 24 at 19; *see Oztimurlenk*, 162 Fed. Cl. at 686 ("Given Plaintiffs' failure to respond to the government's specific arguments and cited evidence, the Court has little choice but to the side with the government.").

Even with respect to their "five-dollar rule" based claims, the Justices' claims that accrued prior to July 8, 2021, regardless of whether they contracted with SSA directly or through an intermediary company, are barred by the FLSA's three-year limitations period for willful violations. In an attempt to circumvent this time bar, the Justices largely raise the same arguments as Plaintiffs Jordan and Greene did and, as with Plaintiffs Jordan and Greene, the Court must find that the statute of limitations cannot be tolled or suspended. Specifically, the Justices allege that their claims should be tolled because they diligently pursued their rights, their claims were concealed by the government, and their rights were unknowable. ECF No. 2 at 10–14. To begin with, the Justices assert that their claims should be tolled or related back to *Lambro*. *Id.* at 9 ("Plaintiffs and Opt-ins in this case ask the court to deem Plaintiff Lambro's attempt to amend the complaint in COFC case 21-cv-0144, as yet another attempt for Plaintiffs in this case to pursue their rights, which has been frustrated by no fault of the Plaintiffs."). For the same reason as with Plaintiffs Jordan and Greene, the Justices' claims cannot relate back to a claim in a separate action; moreover, it is beyond peradventure that the Justices lack an "identity of interest" with Mr. Lambro. *See Big Oak Farms*, 141 Fed. Cl. at 489.

Next, the Justices argue that their claims should be tolled based on a defective state court pleading between private litigants in *Guillen et al. v. Carmazzi*, No. 34-2018-00241370 (Cal. Super. Ct. Sept. 25, 2018). *See* ECF No. 2 at 17. But the Justices cannot relate any of their claims back to the "defective pleading" in *Carmazzi*. Neither the Justices nor the government

were parties to that case, the Justices never worked for the defendants in *Carmazzi*, and the case was removed to district court and dismissed in February 2019. Case Closed Docket Entry, *Guillen v. Carmazzi*, 2:19-cv-00104 (E.D. Cal. Feb. 8, 2019), ECF No. 4. Therefore, even assuming *arguendo* that the Justices' claims could relate back to *Carmazzi*, their claims are still untimely because the statute of limitations would have run in February 2022 over two years before they filed their complaint here and thus putting their claims outside the three-year statute of limitations for willful violations of the FLSA. What is more, the Justices fail to demonstrate that *Carmazzi* was a defective pleading in the first place. As Plaintiffs note, "it is the filing of the right claim in the wrong venue that constitutes a 'defective pleading.'" ECF No. 30 at 24 (citing *Turgeau v. Admin. Rev. Bd.*, 446 F.3d 1052, 1058 (10th Cir. 2006)). But it is not altogether clear that the *Carmazzi* complaint is a case of "the right claim in the wrong venue." *Id.* As the government points out, "state courts [also] possess jurisdiction to adjudicate FLSA claims between private parties." ECF No. 24 at 20.

With regard to the purported "trickery" by the government, the Justices provide even fewer factual allegations regarding the SSA's conduct than Plaintiffs Jordan and Greene do regarding USAGM's conduct. The Justices' assertion that the SSA "actively tricked" them into not filing an FLSA claim, ECF No. 30 at 26, is not plausibly alleged because this conclusion is unmoored from any factual allegations in the complaint. Even at this stage of the litigation, conclusory statements absent plausibly alleged facts get the Justices nowhere. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation."). Finally, for the same reasons discussed above regarding Plaintiffs Jordan and Greene, the Justices may not invoke the accrual suspension rule to suspend the statute of limitations: their rights were similarly not "inherently unknowable," and they likewise failed to demonstrate that the government fraudulently concealed their claims.

After 2017, the Justices worked as court reporters with intermediary companies that contracted with the SSA. ECF No. 1-2 at 15 ¶¶ 5–6, 18 ¶¶ 5–6. As mentioned, regardless of their contracting arrangement, the Justices' claims before July 8, 2021, are untimely. However, it does appear that the Justices may be asserting timely claims for periods after July 8, 2021. That said, from Plaintiffs' complaint and response to the motion to dismiss, it is unclear whether the Justices make a claim against the government under a theory of joint employer liability for this period. *See* ECF No. 2 at 15–16 (citing *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 852 (N.D. Ill. 2017); *Jackson v. Fed. Nat'l Mortg. Ass'n*, 181 F. Supp. 3d 1044, 1053 (N.D. Ga. 2016)). Recall, during this period, the Justices were employed by a private intermediary company that contracted with the SSA to provide and manage court reporters for SSA hearings. ECF No. 1-2 at 15 ¶¶ 5–6, 18 ¶¶ 5–6. To even potentially maintain an actionable claim in this Court, the Justices would have to assert that this arrangement with a private company also imputes the government with liability. 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim *against the United States* . . . .") (emphasis added); *see United States v. Sherwood*, 312 U.S. 584, 588 (1941) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court.").

In construing the complaint in the light most favorable to the Justices, the Court finds that the Justices appear to allege that the government is a joint employer with the private companies

that the Justices contracted with to provide court reporting services.  *See* ECF No. 1 ¶ 2 (claiming that the agencies "contract[ed] with staffing companies, but maintain[ed] strict control over hours, days off, work requirements, equipment used, and virtually every other aspect of the traditional employer-employee relationship").  Such allegations, if proved, could potentially make the government liable for violations of the FLSA while the Justices were contracting with a private entity.  For example, the Justices appear to allege that the "SSA engaged in [a] 'scheme to avoid paying overtime,' by contracting with several 'staffing companies'" that in reality "had no real control over where, when, and how long [the court reporters] worked."  ECF No. 1 ¶ 42; ECF No. 2 at 16.  Additionally, the Justices allege that while the intermediary companies lacked "significant control over [their] work[,] [t]he SSA exercised exclusive control over calendaring and scheduling," and that they were supervised by an SSA supervisor.  ECF No. 1-2 at 15 ¶ 8, 16 ¶ 22; *id.* at 18 ¶ 8, 19 ¶ 22.  Because "the degree of control exercised by the putative joint employer over the workers" and "the extent of the putative employees' work for the putative joint employer" may be indicative of a joint employer relationship, the Justices conceivably allege that the government is a joint employer.  *See Zheng v. Liberty Apparel Co. Inc*, 355 F.3d 61, 68 (2d Cir. 2003) (describing a seven-factor test that a trial court used to determine whether garment workers were jointly employed).

However, it is still not altogether clear from the complaint that this is the legal theory that the Justices are alleging.  Given this ambiguity, the Court defers dismissing the Justices' claims in their entirety because some are potentially timely (those from pay periods on or after July 8, 2021, during which time they contracted with private companies to provide transcription services and may have been jointly employed by the government).

## CONCLUSION

For the foregoing reasons, Plaintiffs Lambro and Burke's claims are **DISMISSED** for lack of subject matter jurisdiction, Plaintiffs Jordan and Greene's claims are **DISMISSED** as time-barred, and Plaintiff Ruberandinda's claims are **DISMISSED** for failure to state a claim upon which relief can be granted.  Pursuant to RCFC 54(b), as there is no just reason for delay, the Clerk shall enter **JUDGMENT** on the claims of Plaintiffs Lambro, Burke, Ruberandinda, Jordan, and Greene.  As is explained below, the Court **DEFERS** ruling on the motion to dismiss as to Plaintiffs Suzette Justice and Steve Justice.

Because the Justices arguably allege some timely claims, the Court will give them the opportunity to seek leave to amend the complaint to more clearly state those claims under a joint employer theory.  Accordingly, the Justices shall move to file an amended complaint **on or before January 26, 2026**.  The proposed amended complaint shall be attached to the motion for leave, and the motion shall indicate the government's position on the motion.  Moreover, the proposed amended complaint shall remove the allegations related to the claims of all other named Plaintiffs in this case and shall ***only*** include allegations related to the Justices' timely claims, which accrued on or after July 8, 2021, under a joint employer theory of liability.  The Justices may plead the complaint as a collective action; however, it may only be pled as a collective related to SSA court reporters employed either directly or indirectly by the SSA.  The Court is aware that consent forms for potential members of a collective have already been filed, including by some who are not SSA court reporters.  To the extent that such individuals are able

to state timely claims for relief, the Court will address whether they may be part of a collective brought by the Justices at a later date.

To be abundantly clear, for now, any proposed amended complaint shall relate solely to the Justices and potentially other current or former SSA court reporters whose claims accrued on or after July 8, 2021. If the Justices choose not to move to amend the complaint on or before January 26, 2026 (unless the Court grants a motion for extension of time for that deadline), the Court will assume the Justices did not in fact intend to state any claims that arose on or after July 8, 2021, and will dismiss the Justices claims as untimely.

**IT IS SO ORDERED.**

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge